1  **Marc A. Lieberman, Esq. (SBN 157318)**
2  **Alan W. Forsley, Esq. (SBN 180958)**
   **FREDMAN LIEBERMAN LLP**
3  1875 Century Park East, Suite 2200
   Los Angeles, CA 90067
4  Telephone:      (310) 284-7350
   Facsimile:      (310) 284-7352
5
6  General Bankruptcy and
   Reorganization Counsel for Debtor Robert Blake

7
8                    UNITED STATES BANKRUPTCY COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
                     SAN FERNANDO VALLEY DIVISION
10

11  In re:                          ) **CASE NO. SV06-10125-GM**
                                    )
12                                  ) In a Case Under Chapter
13  ROBERT BLAKE                    ) 11 of the Bankruptcy Code
                                    ) (11 U.S.C. § 1101 et seq.)
14                                  )
15                        Debtor.   ) **DEBTOR ROBERT BLAKE'S**
                                    ) **DISCLOSURE STATEMENT**
16                                  ) **DESCRIBING HIS CHAPTER 11 PLAN**
                                    )
17                                  ) **Disclosure Statement Hearing**
                                    ) Date:  [TO BE SET]
18                                  ) Time:
19                                  ) Place: Courtroom 303
                                    )        21041 Burbank Blvd.
20                                  )        Woodland Hills, CA 91367-6603
                                    )
21                                  )
                                    ) **Plan Confirmation Hearing**
22                                  ) (To be completed when Applicable)
                                    ) Date:
23                                  ) Time:
24                                  ) Place: Courtroom 303
                                    )        21041 Burbank Blvd.
25                                  )        Woodland Hills, CA 91367-6603
                                    )
26                                  )
                                    )
27  _____       )
28

_Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan_

# TABLE OF CONTENTS

I.   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A.   Purpose of This Document . . . . . . . . . . . . . . . . . . . . . . . . 1

   B.   Deadlines for Voting and Objecting; Date of Plan Confirmation
       Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      1.   Time and Place of the Confirmation Hearing . . . . . . . . . . . . . 2

      2.   Deadline for Voting For or Against the Plan . . . . . . . . . . . . . 3

      3.   Deadline for Objecting to the Confirmation of the Plan . . . . . 3

      4.   Identity of Person to Contact for More Information
          Regarding the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   C.   Disclaimer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  **BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   A.   Description and History of the Debtor's Business . . . . . . . . . . . . . 4

   B.   A Brief Summary of Events Leading to Chapter 11 Filing . . . . . . . . 4

   C.   Significant Events During the Bankruptcy . . . . . . . . . . . . . . . . . . 5

      1.   Bankruptcy Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      2.   Actual and Projected Recovery of Preferential or
          Fraudulent Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      3.   Procedures Implemented to Resolve Financial Problems . . . . 6

      4.   Current and Historical Financial Conditions . . . . . . . . . . . . . 6

III. **SUMMARY OF THE PLAN OF REORGANIZATION** . . . . . . . . . . . . 6

   A.   What Creditors and Interest Holders Will Receive Under
       the Proposed Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   B.   Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      1.   Administrative Expenses . . . . . . . . . . . . . . . . . . . . . . . . . 7

      2.   Priority Tax Claims, Class One . . . . . . . . . . . . . . . . . . . . . 8

   C.   Other Classified Claims and Interests . . . . . . . . . . . . . . . . . . . 9

      1.   Classes of Secured Claims . . . . . . . . . . . . . . . . . . . . . . . 9

      2.   Classes of General Unsecured Claims . . . . . . . . . . . . . . . . 10

   D.   Means of Effectuating the Plan . . . . . . . . . . . . . . . . . . . . . . . 11

      1.   Funding for the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      2.   Post-Confirmation Management . . . . . . . . . . . . . . . . . . . . 11

      3.   Disbursing Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   E.   Risk Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

F.   Other Provisions of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    1.   Retention of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . 11
G.   Tax Consequences of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.   **CONFIRMATION REQUIREMENTS AND PROCEDURES** . . . . . . . 13
A.   Who May Vote or Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    1.   Who May Object to Confirmation of the Plan . . . . . . . . . . . 13
    2.   Who May Vote to Accept/Reject the Plan . . . . . . . . . . . . . . 13
        a.   What is an Allowed Claim/Interest . . . . . . . . . . . . . 13
        b.   What is an Impaired Claim/Interest . . . . . . . . . . . . 14
    3.   Who is <u>Not</u> Entitled to Vote . . . . . . . . . . . . . . . . . . . . . . . . 14
    4.   Who Can Vote in More Than One Class . . . . . . . . . . . . . . 15
    5.   Votes Necessary to Confirm the Plan . . . . . . . . . . . . . . . . . 15
    6.   Votes Necessary for a Class to Accept the Plan . . . . . . . . . . 15
    7.   Treatment of Nonaccepting Classes . . . . . . . . . . . . . . . . . . 15
    8.   Request for Confirmation Despite Nonacceptance by
        Impaired Class(es) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
B.   Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
C.   Feasibility    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.   **EFFECTS OF CONFIRMATION OF PLAN** . . . . . . . . . . . . . . . . . . 21
A.   Discharge    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
B.   Revesting of Property in the Debtor . . . . . . . . . . . . . . . . . . . . . 21
C.   Modification of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
D.   Post-Confirmation Status Report . . . . . . . . . . . . . . . . . . . . . . 22
E.   Quarterly Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
F.   Post-Confirmation Conversion/Dismissal . . . . . . . . . . . . . . . . 22
G.   Final Decree . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VI.   **EXHIBITS**     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    EXHIBIT A  -  LIST OF GENERAL UNSECURED CLAIMS . . . . . . . . 24

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

# I.

## INTRODUCTION

On February 3, 2006, Robert Blake ("Debtor" or "Mr. Blake") commenced this bankruptcy case by filing his Chapter 11 bankruptcy petition under the United States Bankruptcy Code ("Code") 11 U.S.C. § 101 et seq.  Chapter 11 allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan").  The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  Mr. Blake is the party proposing the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganization plan.  In other words, Mr. Blake seeks to make monthly payments to creditors during the life of the Plan.  The Effective Date of the proposed Plan is [*to be determined*].

**A.    Purpose of This Document.**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

    **(1)    WHO CAN VOTE OR OBJECT,**

    **(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

    **(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

///

1    **(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER**

2    **OR NOT TO CONFIRM THE PLAN,**

3    **(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

4    **(6)    WHETHER THIS PLAN IS FEASIBLE.**

5    This Disclosure Statement cannot tell you everything about your rights.  You should

6    consider consulting your own lawyer to obtain more specific advice on how this Plan will affect

7    you and what is the best course of action for you.

8    Be sure to read the Plan as well as the Disclosure Statement.  If there are any

9    inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

10   The Code requires a Disclosure Statement to contain "adequate information" concerning

11   the Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate

12   Disclosure Statement, containing enough information to enable parties affected by the Plan to

13   make an informed judgment about the Plan. Any party can now solicit votes for or against the

14   Plan.

15   **B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.**

16   THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

17   DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT

18   YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE

19   PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

20   CREDITORS AND INTEREST HOLDERS IN THIS CASE.

21   **1.    Time and Place of the Confirmation Hearing.**

22   The hearing where the Court will determine whether or not to confirm the Plan will take

23   place [*to be determined*], in Courtroom 303, at the United States Bankruptcy Court, San

24   Fernando Valley Division, 21041 Burbank Blvd., Woodland Hills, CA 91367.

25   ///

26   ///

27   ///

28   ///

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

**2.      Deadline For Voting For or Against the Plan.**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to:

> Marc A. Lieberman, Esq.
> Fredman Lieberman, LLP
> 1875 Century Park East, Suite 2200
> Los Angeles, CA 90067

Your ballot must be received by [*to be determined*] or it will not be counted.

**3.      Deadline For Objecting to the Confirmation of the Plan.**

Objections to the confirmation of the Plan must be filed with the Court and served upon Debtor's counsel:

> Marc Lieberman, Esq.
> Fredman Lieberman, LLP
> 1875 Century Park East, Suite 2200
> Los Angeles, CA 90067

by [*to be determined*].

**4.      Identity of Person to Contact for More Information Regarding the Plan.**

Any interested party desiring further information about the Plan should contact:

> Marc Lieberman, Esq.
> Fredman Lieberman, LLP
> 1875 Century Park East, Suite 2200
> Los Angeles, CA 90067
> Telephone No. (310) 284-7350.
> Email: ml@fredmanlieberman.com

**C.      Disclaimer**

The financial data relied upon in formulating the Plan is based on Mr. Blake's personal financial records and records prepared by Mr. Blake's accountants Bernstein, Fox, Whitman, Goldman & Sloan LLP (the "Accountants").  The information contained in this Disclosure Statement is provided by Mr. Blake and documents prepared by his Accountants, and is based in part on information provided to Debtor by the general partner of the limited partnerships in which Debtor holds minority interests. The Plan Proponent represents that everything stated in

1  the Disclosure Statement is true to the Proponent's best knowledge.  The Court has not yet

2  determined whether or not the Plan is confirmable and makes no recommendation as to whether

3  or not you should support or oppose the Plan.

4

5                                                    **II.**

6                                            **BACKGROUND**

7  **A.    Description and History of the Debtor's Business.**

8          Mr. Blake is a retired actor and director.  Mr. Blake has unsuccessfully attempted to find

9  other entertainment industry-related business opportunities.  Mr. Blake's current income is

10 generated from social security, SAG and AFTRA pension plans, a private profit sharing plan

11 (collectively "Exempt Retirement Income"), which collectively totals approximately $90,000 per

12 year.  Mr. Blake also receives income in the form of distributions (the "Non-Exempt Income") on

13 account of his minority interests in certain commercial real estate limited partnerships (collectively,

14 the "Partnership Interests"), which over the last year totaled approximately $125,000.

15 **B.    A Brief Summary of Events Leading to Chapter 11 Filing.**

16         This bankruptcy filing was generally precipitated by a $30 million tort verdict entered

17 against Mr. Blake on November 18, 2005 in Los Angeles Superior Court case number EC034380

18 entitled <u>Blanchard E. Tual v. Robert Blake et al</u>.  On February 9, 2006, the court entered

19 judgment against Mr. Blake and in favor of Mr. Tual (the "Tual Judgment").  The Tual Judgment

20 was reaffirmed on appeal, but reduced to $15 million.

21         Prior to the Tual Judgment, Mr. Blake had incurred substantial tax liabilities to the

22 Internal Revenue Service ("IRS") and the Franchise Tax Board ("FTB"), which arose on account

23 of the sale of real property and limited partnership interests (the "Asset Sales").  The proceeds of

24 the Asset Sales were primarily used to pay legal fees and costs incurred in connection with a

25 lengthy criminal trial against Mr. Blake and the civil litigation that resulted in the Tual Judgment.

26         Prior to the Tual Judgment, the IRS and FTB had each secured a portion of their claims

27 by recording liens against Mr. Blake's real property, which primarily consisted of the four (4)

28 income-producing real estate limited partnerships referenced .  Today, the IRS and FTB claims

total approximately $2,155,000 and the Partnership Interests have a total value of approximately $1,284,000.[1]

In addition to the claims of the IRS, FTB and Mr. Tual, Debtor is also indebted to other creditors with general unsecured claims totaling approximately $11,000.

## C.   Significant Events During the Bankruptcy.

### 1.   Bankruptcy Proceedings.

The following is a chronological list of significant events which have occurred during this case:

On February 3, 2006, Mr. Blake filed his Chapter 11 bankruptcy petition.

On March 21, 2006 the Court authorized the employment of Weinstein, Eisen & Weiss, LLP as Mr. Blake's general bankruptcy and reorganization counsel (the firm name was subsequently changed to Weinstein Weiss & Ordubegian, LLP).

On March 29, 2006, the Court set the pre-petition claims bar date for May 15, 2006.

On March 31, 2006, the Court authorized the employment of Bernstein, Fox, Whitman, Goldman & Sloan, LLP as Mr. Blake's accountants and financial managers.

On May 22, 2006, Blanchard E. Tual, administrator for the estate of Bonny Lee Bakely, filed a complaint against Mr. Blake to determine the dischargeability of the Tual Judgment (the "Tual Adversary Proceeding").

On June 28, 2006, the Court authorized Mr. Blake to employ Fredman Lieberman LLP as his general bankruptcy and reorganization counsel in place of Weinstein, Weiss & Ordubegian, LLP.

On August 4, 2006, the Court entered its order authorizing Mr. Blake to employ the Law Offices of M. Gerald Schwartzbach, P.C. as special state court litigation and appellate counsel.

On April 25, 2008, the California Court of Appeals affirmed the Tual Judgment, but reduced it to $15 million. The California Supreme Court subsequently denied review, and the Tual Judgment is now final. The Tual Adversary Proceeding is presently pending.

---

[1]    This figure is based on a 35% minority discount and a combined State and Federal capital gains tax of $752,000 (24.3%) on an estimated sales price of $2,037,000.

5

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

1    On <u>October 24, 2008</u>, Debtor filed an application for court approval of the employment of

2    the Brager Tax Law Group (the "Brager Group"), a bankruptcy tax attorney.

3    **2.    Actual and Projected Recovery of Preferential or Fraudulent Transfers.**

4    Currently, there are no preferential or fraudulent transfer actions pending and none are

5    expected to be filed.

6    **3.    Procedures Implemented to Resolve Financial Problems.**

7    Mr. Blake leads a relatively austere lifestyle, and his personal spending habits did not

8    bring about his financial troubles.  To attempt to resolve the problems that led to the bankruptcy

9    filing, Debtor appealed the Tual Judgment and then petitioned the Supreme Court for review in

10   an attempt to reverse or reduce the Tual Judgment. On one level, Mr. Blake's efforts were

11   extremely successful, because the Court of Appeals reduced the Tual Judgment and the claims

12   against the estate by $15 million.  On the other hand, the Tual Judgment is still enormous, and it

13   is unlikely that Mr. Blake will ever have the means to pay it.

14   **4.    Current and Historical Financial Conditions.**

15   The identity and fair market value of the estate's assets are listed in Section B as set forth

16   on page 18.

17

18   **III.**

19   **<u>SUMMARY OF THE PLAN OF REORGANIZATION</u>**

20   **A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan.**

21   As required by the Bankruptcy Code, the Plan classifies claims and interests in various

22   classes according to their right to priority. The Plan states whether each class of claims or

23   interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

24   **B.    Unclassified Claims.**

25   Certain types of claims are not placed into voting classes; instead they are unclassified.

26   They are not considered impaired and they do not vote on the Plan because they are automatically

27   entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent

28   has <u>not</u> placed the following claims in a class.

**1.     Administrative Expenses.**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Fredman Lieberman LLP | $35,000 | Paid in full on Effective Date |
| Brager Group | $15,000 | Paid in full on Effective Date |
| Bernstein Fox | $35,000 | Paid in full on Effective Date |
| Clerk's Office Fees | n/a | Paid in full on Effective Date |
| Office of the U.S. Trustee | $3,850 | Paid in full on Effective Date |
|  | TOTAL $88,850 |  |

Court Approval of Fees Required:

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay $88,850 worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not by then ruled on the claim.  As indicated elsewhere in this Disclosure Statement, Debtor will have approximately $34,000 of non-exempt cash on hand on the Effective Date of the Plan and $140,000 of exempt cash on hand.  The source of the non-exempt cash is and will be from the Partnership Interests.  The source of exempt cash is and will be the exempt Retirement Income.

///

///

2.    **Priority Tax Claims, Class One.**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax, unless the claimants otherwise consent.  This plan relies on obtaining the consent of the priority tax claimants..

The following chart lists each of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| | **Description** | **Amount Owed** | **Treatment[42]** |
|---|---|---|---|
| Class 1 | • Name = Internal Revenue Service<br>• Type of tax = Income<br>• Date tax assessed = 11/24/03, 9/20/04 & 5/30/05 | $150,000 | • Quarterly Payments beginning as soon as Class 4 is paid in full.<br>• 75% of Limited Partnership Distributions (to be shared pro-rata with FTB's priorty tax claim).<br>• Balloon Payment at end of 1st Quarter after end of year 10 ("Balloon Date"), if not previously paid in full.  If Balloon Payment is insufficient to pay balance of priority claims, then priority claimants to share Balloon Payment pro-rata.  Balloon payment to consist of up to 75% of net, after tax proceeds of sale of Limited Partnership Interests.<br>• End date: Earlier of date of payment in full or Balloon Date.<br>Interest rate 0%<br>• Total payout 100% |
| Class1 | • Name = Franchise Tax Board<br>• Type of tax = Income<br>• Date tax assessed = unknown | $403,000 | • Quarterly Payments beginning as soon as Class 2 is paid in full.<br>• 75% of Limited Partnership Distributions (to be shared pro-rata with IRS priority tax claim).<br>• Balloon Payment at end of 1st Quarter after end of year 10 ("Balloon Date"), if not previously paid in full.  If Balloon Payment is insufficient to pay balance of priority claims, then priority claimants to |

8

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

|  |  |  |  | share Balloon Payment pro-rata.  Balloon payment to consist of up to 75% of net, after tax proceeds of sale of Limited Partnership Interests.<br>• End date: Earlier of date of payment in full or Balloon Date.<br>• Interest rate 0%<br>• Total payout 100% |

## C.   Other Classified Claims and Interests

### 1.   Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of:<br>• IRS of $192,000<br>• Lien on: All nonexempt personal property.<br>• Collateral value = Approx. $1,285,000<br>• Priority of security  int. =1<br>• Total claim amount=$192,000 | N | Y | • Quarterly Payments beginning at commencement of first quarter after Effective Date.<br>• 75% of Limited Partnership Distributions<br>• Balloon Payment at end of 1st Quarter after end of year 10 ("Balloon Date"), if not previously paid in full. [50]<br>• Begin date: Effective Date<br>• End date: Earlier of date of payment in full or Balloon Date<br>• Interest rate 0%<br>• Total payout 100%<br>• Treatment of Lien: Unaffected by bankruptcy |
| 3 | Secured claim of:<br>• Franchise Tax Board of $32,500 | N | Y | • Quarterly Payments beginning as soon as Class 2 is paid in full. |

9

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

| | | | |
|---|---|---|---|
| • Collateral description = All non exempt personal property.<br>• l Collateral value = 1,285,000<br>• l Priority of security int. = 2<br>• Total secured claim amount = $32,500 | | | • 75% of Limited Partnership Distributions.<br>• Balloon Payment at end of 1st Quarter after end of year 10 ("Balloon Date"), if not previously paid in full.<br>• End date: Earlier of date of payment in full or Balloon Date.<br>• Interest rate 0%<br>• Total payout 100%<br>• Treatment of Lien: Unaffected by bankruptcy |

## 2.   Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims (see Exhibit F for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 4 | General unsecured claims<br>• Total amt of claims =$15,011,000 | Y | • Quarterly Payments beginning as soon as Class 3 is paid in full.<br>• 25% of Limited Partnership Distributions.<br>• Balloon Payment at end of 1st Quarter after end of year 10 ("Balloon Date"), if not previously paid in full<br>• End date: Earlier of date of payment in full or Balloon Date.<br>• Interest rate 0%<br>• Total payout 100%[A]<br>• Treatment of Lien:<br>• Unaffected by bankruptcy |

[A] While payment in full of all claims, including general unsecured claims is possible, depending on how evolving market conditions affect the value of the Limited Partnership Interests, it is unlikely that general unsecured claims will in fact be paid in full.

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Convenience Class<br><br>• Any claimant may elect to accept up to $2,000 as payment in full on the total of amount of its claims. | N | • Payment in full on Effective Date from funds on hand. Debtor anticipates that 9 general unsecured creditors (whose claims otherwise total about $60,000) will accept payments totaling approximately $10,000, leaving the estate with only 3 creditors: The IRS, FTB and Mr. Tual. |

**D.     Means of Effectuating the Plan**

**1.     Funding for the Plan**

The Plan will be funded first from income from the Limited Partnership Interests, and then from the proceeds of the sale of those interests in the first quarter of year 11.

**2.     Post-confirmation Management**

Bernstein Fox will manage the Limited Partnership Interests for the benefit of creditors.

**3.     Disbursing Agent**

Bernstein Fox will act as the disbursing agent under the Plan.

**E.     Risk Factors**

The proposed Plan has the following risks: Based on factors beyond Debtor's control, the income derived from the Limited Partnerships may decrease and/or the value of the Limited Partnership Interests may decline, all depending on such factors as changes in the values of commercial real estate, the terms of any refinancing of the commercial real estate owned by the Limited Partnerships, and decisions made by the general partner(s) of the Limited Partnerships.

**F.     Other Provisions of the Plan**

**1.     Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law.

///

///

///

11

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

1  **G.      Tax Consequences of Plan**

2          CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN

3  MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

4  ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible

5  tax consequences is intended solely for the purpose of alerting readers about possible tax issues

6  this Plan may present to the Debtor.  The Proponent CANNOT and DOES NOT represent that

7  the tax consequences contained below are the only tax consequences of the Plan because the Tax

8  Code embodies many complicated rules which make it difficult to state completely and

9  accurately all the tax implications of any action.

10          The following are the tax consequences which the Plan will have on the Debtor's tax

11  liability: The Plan contemplates the eventual sale of the Limited Partnership Interests which will

12  likely trigger a capital gains tax liability.  The amount of that liability cannot be calculated at

13  present, because it will depend on the amount of gain and on the capital gains tax rates in effect

14  at the time of sale. Nevertheless, the tax is likely to be substantial and will reduce the amounts

15  that would otherwise be available to pay creditors.  Furthermore, limited partners are subject to

16  tax based on their pro-rata share of income received by the Limited Partnerships, whether or not

17  any portion of that income is distributed to the Limited Partners.  However unlikely, it is possible

18  that either the lenders or the general partner will require principal pay downs from partnership

19  income, which may trigger a tax obligation greater than distributions.  If this were to happen, the

20  Limited Partnership Interest would likely *increase* in value (because the Limited Partnership

21  would have more equity in its real estate assets), However, it would also require Debtor to go out

22  of pocket to pay taxes.  If this should happen, tax paid by Debtor on undistributed Partnership

23  income during a particular period would be recouped from future distributions or from the sale of

24  the partnership interest.

25  ///

26  ///

27  ///

28  ///

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

1

## IV.

2

## CONFIRMATION REQUIREMENTS AND PROCEDURES

3    PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN

4  SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

5  CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following

6  discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

7  which they may wish to consider, as well as certain deadlines for filing claims. The proponent

8  CANNOT and DOES NOT represent that the discussion contained below is a complete summary

9  of the law on this topic.

10    Many requirements must be met before the Court can confirm a Plan. Some of the

11  requirements include that the Plan must be proposed in good faith, acceptance of the Plan,

12  whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7

13  liquidation, and whether the Plan is feasible. These requirements are not the only requirements

14  for confirmation.

15  **A.    Who May Vote or Object.**

16    **1.    Who May Object to Confirmation of the Plan.**

17    Any party in interest may object to the confirmation of the Plan, but as explained below

18  not everyone is entitled to vote to accept or reject the Plan.

19    **2.    Who May Vote to Accept/Reject the Plan.**

20    A creditor or interest holder has a right to vote for or against the Plan if that creditor or

21  interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2)

22  classified in an impaired class.

23    **a.    What Is an Allowed Claim/Interest.**

24    As noted above, a creditor or interest holder must first have an allowed claim or interest to

25  have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in

26  interest brings a motion objecting to the claim. When an objection to a claim or interest is filed,

27  the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice

28  and hearing, either overrules the objection or allows the claim or interest for voting purposes.

13

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS MAY 15, 2006. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult Exhibits F through L to see how the Proponent has characterized your claim or interest.

### b.    What Is an Impaired Claim/Interest.

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that classes 1- 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that class 5 is unimpaired and that holders of claims in that class therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.    Who is <u>Not</u> Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

1   have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE,

2   YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

3       **4.**      **Who Can Vote in More Than One Class**

4       A creditor whose claim has been allowed in part as a secured claim and in part as an

5   unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

6   the secured part of the claim and another ballot for the unsecured claim.

7       **5.**      **Votes Necessary to Confirm the Plan**

8       If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one

9   impaired class has accepted the Plan without counting the votes of any insiders within that class,

10  and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be

11  confirmed by "cram-down" on non-accepting classes, as discussed later in Section {IV.A.8.}.

12      **6.**      **Votes Necessary for a Class to Accept the Plan**

13      A class of claims is considered to have accepted the Plan when more than one-half (1/2)

14  in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted

15  in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least

16  two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to

17  accept the Plan.

18      **7.**      **Treatment of Non-accepting Classes**

19      As noted above, even if all impaired classes do not accept the proposed Plan, the Court

20  may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required

21  by the Code.  The process by which non-accepting classes are forced to be bound by the terms of

22  the Plan is commonly referred to as "cram-down."  The Code allows the Plan to be "crammed

23  down" on non-accepting classes of claims or interests if it meets all consensual requirements

24  except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and

25  is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred

26  to in 11 U.S.C. § 1129(b) and applicable case law.

27  ///

28  ///

---

15

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

**8.      Request for Confirmation Despite Nonacceptance by**

**Impaired Class(es)**

The party proposing this Plan asks the Court to confirm this Plan by cram-down on impaired classes if any of these classes do not vote to accept the Plan.

Please note that the proposed Plan treatment described by this Disclosure Statement cannot be crammed down on the Internal Revenue Service or the Franchise Tax Board. AS A RESULT, IF ANY OF THESE CLASSES DOES NOT VOTE TO ACCEPT THE PLAN, THE PLAN WILL NOT BE CONFIRMED.

**B.      Liquidation Analysis**

Another confirmation requirement is the "Best Interests of Creditors Test,"which requires a liquidation analysis.  Under the Best Interests of Creditors Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.  The Plan Proponent maintains that this requirement is met here because under a liquidation unsecured creditors will receive no money.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive

16

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

1  under a Chapter 7 liquidation.

2

3

4                         [This rest of this page is intentionally blank.]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

**ASSETS VALUED AT LIQUIDATION VALUES:**

CURRENT NON-EXEMPT ASSETS

a.  Non-Exempt Cash on hand approximately                    $      34,000

b.  Limited Partnerships (net of capital gains tax)                1,284,576
    1. 1347 Partnership[2] = $523,203
    2. 401 Partnership[3] = $633,177
    3. Son of 401 Partnership = $128,197

c.  Real Estate (Tulare county raw land)[4]                             0

e.  Receivables[5]                                                      0

    Disputed Duvall Receivable (estimated maximum
    face Value $59,000)

    Disputed Caldwell Receivable (estimated maximum
    face value $120,000)

    Disputed Hurwutiz Receivable
    (Estimated face value $220,000)

---

[2]      The 1347 Partnership owns real property located at 1343-1351 4th Street, Santa Monica, California. The property has a fair market value of $18,300,000, a mortgage of $6,113,000, and equity of $12,187,000. To determine value of Debtor's 9.65% interest, apply 35% minority discount leaving $763,637. Debtor's tax basis is: ($225,806), and therefore a sale at $763,637 will generate a gain of $989,443, and a 24.3% capital gains tax of $240,435, *leaving $523,203 to distribute based on a hypothetical sale, exclusive of costs of sale.*

[3]      The 401 Partnership owns real property located at 401-415 Santa Monica Blvd and 1355-1357 4th St, Santa Monica, California. The properties have a combined fair market value of $17,800,000, mortgage totaling of $6,517,000, and total equity of $11,283,000. To determine value of Debtor's 14.46% interest, apply 35% minority discount leaving $1,060,489. Debtor's tax basis is: ($697,007), and therefore a sale at $1,060,489 will generate a gain of $1,758,486, and a 24.3% capital gains tax of $437,312, *leaving $633,177 to distribute based on a hypothetical sale, exclusive of costs of sale.*

[4]      This piece of raw land was scheduled with a value of $6,000 in at the time that the case was filed. Based on current market conditions, the property does not appear to be marketable and is therefore assigned a value of $0 for Chapter 7 liquidation purposes.

[5]      Debtor identified in his bankruptcy schedules three individuals, including his daughter Delinah Hurwitz, who debtor believes owe him (now the estate) collectively $399,000. In the course of this case, each of the individuals identified have either disputed that any amounts are owed and/or has given Debtor reason to believe that they are uncollectible. Debtor has determined that it would not be cost-effective for the estate to pursue any of these claims, and has, therefore, assigned to them a value of $0 for the purpose of this liquidation analysis. However, Debtor also recognizes the appearance of conflict with respect to his making such a determination with respect to his daughter. Accordingly, Debtor has and will continue to offer to assign all of these claims as the Court, OUST and creditors deem appropriate, along with Debtor's continued cooperation in prosecuting these claims.

18

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

| | | |
|---|---|---|
| **Total Assets at liquidation value:** | | $ 1,318,576 |
| Less projected administrative expenses: | | (100,000 est.) |
| Less payment of Priority and Secured Claims of IRS and FTB | | (1,861,247) |
| BALANCE AFTER PAYMENT OF PRIORITY AND SECURED CLAIMS OF IRS AND FTB | | $0 |

PERCENTAGE OF CLAIMS THAT GENERAL UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: 0%[6]

PERCENTAGE OF CLAIMS THAT GENERAL UNSECURED CREDITORS WOULD RECEIVE OR RETAIN UNDER THE PROPOSED PLAN: UP TO 100% [7]

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Priority Tax Claims-Class 1 | up to 100% | approximately 69% |
| Class 2 - | up to 100% | approximately 69% |
| Class 3 - | up to 100% | approximately 69% |
| Class 4 - | up to 100% | 0% |
| Class 5- | 100% | 0% |

---

[6]     The deficiency portion of a secured recourse claim must be added to the total amount of unsecured claims.

[7]   If this percentage is greater than the amount to be paid to the unsecured creditors on a "present value basis" under the Plan, the Plan is not confirmable unless Proponent obtains acceptance by every creditor in the general unsecured class.

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

C.    **Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash Debtor will have on hand by Effective Date | $34,000 est. |
| Administrative claims (Attorney fees, accounting fees, OUST fees) | ($88,850) est. |
| Other Plan Payments due on Effective Date (payments due to convenience class) | ($10,000) est. |
| Balance after paying these amounts | $0[8]. |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | | |
|---|---|---|
| $ | 33,810 | Cash in DIP Account now |
| | 0 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| + | 65,040 | Other (Cash contributed by Debtor from Exempt Retirement Account) |
| $ | 98,850 | Total |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

In summary, the Plan proposes to pay each holder of:

(1)    an impaired general unsecured its pro-rata share of 25% of the net distributions on account of the Limited Partnership Interests and 25% of the proceeds from the sale of the Limited

---

[8] Debtor anticipates paying substantial portion of administrative expenses from Exempt Retirement Proceeds.

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

1  Partnership Interests as soon as practicable after year 10 of the Plan.

2          (2)      Secured and Priority Claims its pro-rata share of 75% of the net distributions on

3  account of the Limited Partnership Interests and 75% of the proceeds from the sale of the Limited

4  Partnership Interests as soon as practicable after year 10 of the Plan.

5          The final Plan payment is expected to be paid on about March 1, 2019. The Debtor

6  contends that the Plan is feasible because it does not depend on a regular income stream.

7  Nevertheless, 100% of the net cash received on account of the Limited Partnerships will be

8  distributed to impaired creditors as set forth above.

9

10                                          **V.**

11                     **EFFECT OF CONFIRMATION OF PLAN**

12  **A.      Discharge.**

13          This Plan provides that upon confirmation of the Plan, Debtor shall be discharged of

14  liability for payment of debts incurred before confirmation of the Plan, to the extent specified in

15  11 U.S.C. § 1141.  In addition, Debtor shall also be discharged from all debts that would have

16  been discharged pursuant to 11 U.S.C. §1141 but for the operation of 11 U.S.C. §1141(d)(2) and

17  (d)(3).  However, the discharge will not discharge any liability imposed by the Plan.

18  **B.      Revesting of Property in the Debtor.**

19          Except as provided in Section {V. E.}, and except as provided elsewhere in the Plan, the

20  confirmation of the Plan revests all of the property of the estate in the Debtor.  The Debtor will

21  retain all of his property to implement the Plan.

22  **C.      Modification of Plan.**

23          The Proponent of the Plan may modify the Plan at any time before confirmation.

24  However, the Court may require a new disclosure statement and/or re-voting on the Plan.

25          The Proponent of the Plan may also seek to modify the Plan at any time after

26  confirmation only if (1) the Plan has not been substantially consummated and (2) the Court

27  authorizes the proposed modifications after notice and a hearing.

28

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

**D.      Post-Confirmation Status Report.**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.  Further status reports shall be filed every 120 days and served on the same entities.

**E.      Quarterly Fees.**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.      Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

///

///

///

///

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

1    **G.    Final Decree.**

2        Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

3    Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall

4    file a motion with the Court to obtain a final decree to close the case.

5

6

7    DATED:    October 27, 2008                              FREDMAN | LIEBERMAN, LLP

8

9                                                            By: _____

10                                                               Marc A. Lieberman
11                                                               Alan W. Forsely
12                                                               Attorneys for Robert Blake

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

*Debtor Robert Blake's Disclosure Statement Describing His Chapter 11 Plan*

EXHIBIT A

EXHIBIT A

LIST OF GENERAL UNSECURED CLAIMS

## CLASSIFIED CLAIMS: UNSECURED CLAIMS

| Class | Name | Insider | Impaire | SCHEDULED CLAIMS | | FILED CLAIMS | |
|---|---|---|---|---|---|---|---|
| | | | | Amount | D/C/U* | Amount | Objection |
| | Blanchard Tual | No | Yes | $15,000,000 | | | |
| | Forensic Analytical | No | Yes | $4,090 | | | |
| | Informed Choice Invs. | No | Yes | $600 | | | |
| | Larsen AVR Group, Inc. | No | Yes | $591 | | | |
| | Burch Porter Law Offices | No | Yes | $606 | | | |
| | Haight Brown | No | Yes | $8,309 | | | |
| | Ronald Siegel PhD. | No | Yes | $1,800 | | | |
| | L.A. County Treasurer | No | Yes | $1,446 | | | |
| | Breezy Productions | Yes | Yes | $43,381 | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | **TOTAL AMOUNT FOR CLASS** | | | $15,060,823 | | | |
| | | | | | | | |

* Disputed/contingent/unliquidated